UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VERNA B. NEILSON,

        Appellant,

        -v-                                                      1:18-CV-1101

ESTATE OF ELENA DUKE
BENEDICT, Patrick J. Carr,
as Executor,

        Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HODGSON, RUSS LAW FIRM<br>Attorneys for Appellant<br>677 Broadway, Suite 301<br>Albany, NY 12207 | RICHARD L. WEISZ, ESQ. |
| BEATTIE, PADOVANO LAW FIRM<br>Attorneys for Appellee<br>50 Chestnut Ridge Road, Suite 208<br>Montvale, NJ 07645 | PATRICK J. MONAGHAN, JR., ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Appellant Verna B. Neilson ("Neilson" or "debtor"), a chapter 11 debtor, appeals from an August 31, 2018 Memorandum–Decision & Order (the "August 31 MDO") issued by United States Bankruptcy Judge Robert E. Littlefield, Jr. granting a motion by appellee Estate of Elena Duke Benedict (the "Estate" or "appellee") to dismiss the debtor's bankruptcy case for bad faith. *In re Neilson*, 2018 WL 6982228 (Bankr. N.D.N.Y. Aug. 31, 2018).

On October 23, 2018, Neilson designated portions of the record for appeal, and on January 23, 2019, filed a brief in support of her bid for reversal of the bankruptcy court's August 31 MDO. Dkt. Nos. 3-4, 6. Shortly thereafter, the Estate filed with the Court a suggestion of death advising that Patrick J. Carr, the Executor of the Estate, had passed away on January 14, 2019. Dkt. No. 7. In light of Mr. Carr's death, appellee sought to extend the briefing schedule for this appeal. *Id*.

The Court granted the Estate's initial request for an extension, and thereafter granted a series of five additional requests by appellee to extend the deadlines, ultimately directing the Estate to file its brief on or before February 14, 2020. Dkt. Nos. 9-19. Because that due date has now come and gone without (1) the requisite filing from appellee or (2) another request for an extension of time, the appeal will be decided on the basis of the available submissions without oral argument.

## II. **BACKGROUND**[1]

The story of this appeal begins with Elena Duke Benedict ("Ms. Benedict"), the daughter of an early investor in Tropicana Products, Inc., a multinational beverage company founded in the 1940s. *In re Neilson*, 2018 WL 6982228, at *1. Ms. Benedict, in turn, had six daughters of her own, including Verna B. Neilson, the debtor in the underlying bankruptcy case and the appellant in this proceeding. *Id*.

In 1983, the aging Ms. Benedict entered into an annuity agreement that guaranteed her the princely sum of $24,067.90 each month for the remainder of her life. *In re Neilson*, 2018 WL 6982228, at *1. Four years later, in 1987, Ms. Benedict's six daughters jointly

---

[1] The background recounted here is drawn from Neilson's submissions and a review of the portions of the record designated on appeal.

assumed the obligation to make the monthly annuity payments to their mother in exchange for immediate access to a lump sum worth approximately $2.26 million. *Id*. The daughters wisely hired a financial agent to invest the lump sum on their behalf and to make the monthly payments to Ms. Benedict in the event they failed to do so. *Id*. Unfortunately, however, the lump sum declined in value and, by 1994, Ms. Benedict began to receive only partial monthly annuity payments under the agreement she struck with her children. *Id*.

In 1997, Neilson and one of her sisters, Patricia, sued the financial agent and several other defendants alleging mismanagement of the lump sum they had received from their mother back in 1987. *In re Neilson*, 2018 WL 6982228, at *1 & n.1. According to the disclosure statement later filed as part of her bankruptcy petition in this case, debtor and her sister managed to collect settlements totaling approximately $9,000,000 as a result of this litigation. *Id*.

Apparently, though, the two sisters did not use this money to get current on their financial obligations to their mother. In 1999, Ms. Benedict sued all six of her daughters in state court alleging a breach of the 1987 annuity agreement (the "annuity litigation"). *In re Neilson*, 2018 WL 6982228, at *1.

This annuity litigation dragged on for years, and in that time several of the daughters settled with their mother and were released from the action. *In re Neilson*, 2018 WL 6982228, at *1. Although Ms. Benedict eventually passed away in March of 2010, her Estate continued litigating the annuity dispute because a substantial sum of money remained in play. *Id*. at n.2.

Finally, on March 31, 2014, after nearly fifteen years of litigation, the state court found the daughters who had not settled with their mother—a subset of siblings that included

Neilson—to be jointly and severally liable to the Estate under the 1987 annuity agreement. *In re Neilson*, 2018 WL 6982228, at *1. While the parties wrangled over the precise measure of damages owed to her mother's Estate, debtor shielded herself against this inevitable money judgment by transferring a piece of valuable real estate—a 7,500 square foot dwelling situated on 66 acres in Kinderhook, New York (the "Property")—out of her own name.

First, Neilson transferred her sole ownership interest in the Property to herself and her husband as joint tenants. *In re Neilson*, 2018 WL 6982228, at *2. Second, debtor and her husband jointly transferred a 75% interest in the Property to a trust for the benefit of their children. *Id*. Following these two transfers, debtor continued to reside in the mansion located on the Property. *Id*.

On September 27, 2016, the state court issued a determination of the Estate's damages arising from the annuity litigation and, on October 25, 2016, signed off on a judgment in the amount of $4,237,755.03. *In re Neilson*, 2018 WL 6982228, at *2. As of the date of the August 31 MDO at issue here, Neilson had timely filed a notice of appeal from this adverse state court judgment but had not taken action to perfect it. *Id*.

Unfortunately, this protracted dispute over the annuity payments owed to Ms. Benedict was not the only litigation between mother and daughter. As it turns out, Ms. Benedict and 6D Farm Corporation ("6D Farm Corp.") were equal partners in Benedict Dairy Farms, a partnership entity which has been in dissolution since 1998. *In re Neilson*, 2018 WL 6982228, at *1.

Neilson owns a five-sixths interest in this dairy farm partnership, and in 2005 she relied on this interest to sue her partner and mother in state court, alleging that Ms. Benedict

had failed to make certain required capital contributions to the business (the "dairy farm litigation"). *In re Neilson*, 2018 WL 6982228, at *1. More recently, in September of 2015 debtor served a claim against her mother's Estate in the amount of $2,595,697 allegedly owed to the dairy farm partnership. *Id*. The dairy farm litigation remains in discovery. *Id*.

On April 4, 2017, Neilson filed a voluntary chapter 11 bankruptcy petition. *In re Neilson*, 2018 WL 6982228, at *2. When the Estate caught wind of this filing, it commenced an adversary proceeding in the bankruptcy case objecting to debtor's discharge. *Id*. In turn, debtor (1) commenced her own adversary proceeding seeking to avoid the Estate's $4 million judgment lien from the annuity litigation; (2) moved for a Rule 2004 examination of the Estate's executor; and (3) objected to the Estate's Proof of Claim. *Id*. Debtor also moved for sanctions against the Estate for an alleged violation of the automatic stay. *Id*. Finally, and most importantly for purposes of this appeal, on September 12, 2017, the Estate moved to dismiss debtor's petition for bad faith under 11 U.S.C. § 1112(b). *Id*.

The bankruptcy court initially assigned the parties' myriad disputes to mediation. *In re Neilson*, 2018 WL 6982228, at *2. When that failed to produce a resolution, the bankruptcy court heard oral argument on the Estate's motion to dismiss. *Id*.; *see also* Oral Argument Tr., Dkt. No. 3-6, at 4.[2] According to the Estate, debtor had filed her bankruptcy petition in an effort to prolong the state court litigation mentioned above rather than for a true bankruptcy purpose. *In re Neilson*, 2018 WL 6982228, at *2. Debtor, for her part, claimed that she filed bankruptcy in a good-faith effort to reorganize. *Id*. According to debtor, the Estate may actually wind up owing *her* money if she can (1) prevail on her appeal from the annuity

---

[2] Pagination corresponds with CM/ECF.

litigation and (2) win on her claim in the dairy farm litigation. *Id*.

On August 31, 2018, the bankruptcy court granted the Estate's motion to dismiss Neilson's bankruptcy case. *In re Neilson*, 2018 WL 6982228, at *2-*6. Although the bankruptcy court recognized that simply filing for chapter 11 relief, even as a tactic to stay existing state court litigation, is not *per se* bad faith, Judge Littlefield balanced several other factors before concluding "that the Debtor did not file this case for the proper purpose of reorganizing but rather for the improper purpose of relitigating and continuing to litigate." *Id*. at *6. Accordingly, Judge Littlefield granted the Estate's motion to dismiss. *Id*. at *7. This appeal followed.

## III. **LEGAL STANDARD**

A federal district court enjoys jurisdiction to entertain appeals from "final judgments, orders, and decrees" issued by a bankruptcy court sitting in the same judicial district. 28 U.S.C. § 158(a). "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'n, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012).

"A district court may find a bankruptcy court's determination to be clearly erroneous when, on consideration of the record as a whole, the court is left with the definite and firm conviction that a mistake has been committed." *Hilton v. Wells Fargo Bank, N.A.*, 539 B.R. 10, 15 (N.D.N.Y. 2015) (Suddaby, J.). On the other hand, "[a] lower court's choice between two permissible views of the facts cannot be held to be clearly erroneous." *In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 191 (S.D.N.Y. 2011).

## IV. **DISCUSSION**

As an initial matter, the Estate's failure to file a responsive brief in this appellate proceeding raises the question of whether Neilson somehow wins by default. The answer to that question is no. "Where an appellee has failed to file a responsive brief in a bankruptcy appeal, generally the appropriate remedy is not the automatic granting of the appellant's appeal, but a review of the merits of the appeal, and the preclusion of the appellee from being heard at oral argument." *Matarese v. Robinson*, 2018 WL 1406630, at *2 (N.D.N.Y. Mar. 20, 2018) (Suddaby, J.).

Turning to the merits, Neilson's appeal challenges several of the bankruptcy court's factual findings and insists that Judge Littlefield should have held an evidentiary hearing to resolve certain contested issues of fact before ruling on the merits of the Estate's motion to dismiss. In particular, debtor argues the bankruptcy court clearly erred in concluding as a factual matter that she: (1) filed her chapter 11 petition for a bad purpose; (2) unduly delayed state court proceedings, including delaying her pursuit of an appeal from the judgment entered against her in the annuity litigation; and (3) violated her fiduciary duty to her creditors and to the bankruptcy estate. Appellant's Brief, Dkt. No. 6 at 6-11 ("Brief").

"Under 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a chapter 11 petition if the party moving for dismissal can establish cause." *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (Sharpe, J.). As relevant here, "cause for dismissal may exist where a chapter 11 petition is filed in bad faith." *Id*. (citing *C-TC 9th Ave. P'Ship v. Norton Co.*, 113 F.3d 1304, 1310-11 (2d Cir. 1997)).

"A petition is filed in bad faith if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability

that [the debtor] would eventually emerge from bankruptcy proceedings." *In re AAGS Holdings, Inc.*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019) (citation and internal quotation marks omitted).[3]

"[A] determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly." *C-TC 9th Ave. P'Ship*, 113 F.3d at 1312; *see also In re Kingston Square Assocs.*, 214 B.R. 713, 725 (S.D.N.Y. 1997) (describing the analysis as "essentially conducting an on-the-spot evaluation of the Debtor's financial condition [and] motives"). Importantly, though, "dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re East End Dev., LLC*, 491 B.R. 633, 641 (Bankr. E.D.N.Y. 2013).

Upon review of Judge Littlefield's August 31 MDO in light of this governing law, Neilson's various arguments must be rejected. First, debtor insists the bankruptcy court clearly erred in finding that she did not file her case for a proper purpose. In making this argument, debtor emphasizes that she has protected the Property by paying taxes, fees, insurance, and by purchasing heating oil for the mansion. In debtor's view, the Property would be "the primary source of recovery" for the Estate and therefore her conduct tends to support a finding that she "operated an efficient and meaningful Chapter 11 case to preserve value for all creditors." Brief at 6-8.

The problem with this argument is that it represents nothing more than a competing

---

[3] Some courts go on to break this language out into a more detailed two-pronged test with objective and subjective elements. *See, e.g.*, *Squires Motel, LLC*, 426 B.R. at 34-35. However, the quoted language also captures both elements of the test.

view of some of the facts in the record. As the bankruptcy court found, Neilson had not worked in 35 years, and had reported $5.00 or less of income in "eight of the sixteen months for which she has filed operating reports" even though her "monthly disbursements since May 2017 have ranged between $1,577.00 and $21,601.00." *In re Neilson*, 2018 WL 6982228, at *4. As the bankruptcy court also found, debtor had consistently depleted the funds in her checking account and, since the filing of her bankruptcy case, reported a net cash flow of *negative* $113,070.00. *Id*.

Applying its subject matter expertise in light of those additional facts, the bankruptcy court concluded "Debtor objectively has no hope of funding a plan of reorganization." *In re Neilson*, 2018 WL 6982228, at *4. Although Neilson has pointed out a few facts that might suggest otherwise, their combined force falls far short of demonstrating that the bankruptcy court's finding on this issue was "clearly erroneous." *See, e.g.*, *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228 (7th Cir. 1988) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."). Accordingly, this argument will be rejected.

Neilson's second argument fails for substantially the same reason. According to debtor, the bankruptcy court unfairly concluded she had delayed the state court proceedings, such as by failing to perfect an appeal from the money judgment in the annuity litigation. In debtor's telling, she reasonably waited to perfect this appeal because the bankruptcy court sent the parties to mediation and in fact specifically instructed her counsel not to seek to lift the automatic stay.

Again, though, this framing of the August 31 MDO does not tell the whole story. First

off, the bankruptcy court was well aware that at one point Neilson's counsel orally requested permission to file a motion to lift the stay, and even observed that the stay would not ordinarily apply to a debtor's pursuit of a state court appeal. *In re Neilson*, 2018 WL 6982228, at *5 nn. 8-9. Even so, based on a thorough and complete consideration of all the various facts and circumstances presented by this case (including those referenced by debtor in her appellate brief), Judge Littlefield concluded that "Debtor's conduct as it relates to both the [a]nnuity and [dairy farm] litigation undermines her arguments that this case should not be dismissed and cements that this case is a two party dispute that belongs in state court." *Id*. at *5. There is nothing "clearly erroneous" about this bottom-line factual determination. Accordingly, this argument will be rejected.

Third and finally, Neilson insists she did not violate her fiduciary duty to her creditors or to the bankruptcy estate because she acted diligently to protect the Property. As debtor again explains, she made sure to file her bankruptcy petition quickly enough to preserve the ability to set aside the Estate's $4 million judgment lien as a preference, a tactical decision that if successful would permit her to sell the Property and use the sale proceeds to pay her other creditors. She also points out that she fully participated in the bankruptcy process by, *inter alia*, filing monthly operating reports, paying certain fees, operating a bank account, and appearing at certain required hearings.

But a bankruptcy debtor is obligated to do more than just go through certain motions that create the appearance of diligence. In the case below, Neilson enjoyed continued control over her assets as a so-called "debtor in possession," a term of art used to refer to a person or corporation that has filed for chapter 11 bankruptcy protection but still holds property to which creditors have some kind of a legal claim.

As the bankruptcy court correctly noted, this debtor-in-possession ("DIP") status imposes on a debtor certain obligations, including an obligation to act in ways that maximize the value of the bankruptcy estate for creditors. *In re Neilson*, 2018 WL 6982228, at *6 ("While a chapter 11 DIP is not under a statutory duty to liquidate assets, the DIP must maximize the value of the estate for creditors."). Where, as here, the DIP lacks any meaningful income, the debtor must ordinarily sell off property, and move to avoid any transfers that may have occurred, if it ever hopes to pay off its creditors and emerge from bankruptcy. *Id*.

Neilson did not do any of that, dragging her feet on these tasks while maintaining that she has "otherwise lived very frugally" since filing her chapter 11 petition. Brief at 11. But that assertion is not responsive to the bankruptcy court's careful findings. The court below concluded that Neilson violated her fiduciary duty to creditors and to the bankruptcy estate by refusing to attempt to unwind the property transfers she undertook until some future point in time when the annuity litigation and the dairy farm litigation both concluded in state court, a process likely to take many more years. *See In re Neilson*, 2018 WL 6982228, at *6.

Notably, in making this determination the bankruptcy court did not rely on the Estate's accusations of improper spending but rather relied on some straightforward realities undisputed in the record: (1) debtor had vanishingly little income; and (2) there existed a demonstrated pattern of significant delay associated with both the annuity litigation and the dairy farm litigation.[4] In light of those factors, there is nothing "clearly erroneous" about the bankruptcy court's conclusion that "the Debtor did not file this case for the proper purpose of

---

[4] It was therefore unnecessary for the bankruptcy court to conduct an evidentiary hearing on the Estate's accusations of impropriety.

reorganizing but rather for the improper purpose of relitigating and continuing to litigate." *In re Neilson*, 2018 WL 6982228, at *6. Accordingly, this argument will be rejected.

## V. **CONCLUSION**

Even though the Estate failed to file a responsive brief in this appeal, it is clear that Judge Littlefield's August 31 MDO should be affirmed.

Therefore, it is

ORDERED that

1. The August 31, 2018 MDO is AFFIRMED; and

2. Neilson's appeal is DISMISSED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: March 9, 2020
       Utica, New York.

United States District Judge